Alright, we can go on with the next case please. In re. RS Air, LLC Jennifer Hayes and Jeffrey L. Fullerup Counsel for Appellants RS Air, LLC and Stephen G. Perlman Kelly E. Singer, Counsel for Appalee NetJets Aviation, Inc. et al. Okay, good afternoon. Ms. Hayes, do you want to reserve some time? Well, actually, I should ask the appellants. Have you agreed on how to divide up your time, and how much time do you want to reserve? Your Honor, we have, and I would request, or we would request, to reserve three minutes, the greater of three minutes, or whatever time is remaining. Sure, of course. Okay, go ahead, whoever is going to start. Okay, good afternoon, Your Honors. Jennifer Hayes of Finestone Hayes, LLP, on behalf of Appellant RS Air. Your Honors, this appeal presents an important question. Do the federal courts want a flood of post-discharge litigation on pre-petition alter-ego claims? And that's what's coming if NetJets prevails on this appeal, particularly as to single-member LLCs. NetJets has a pending alter-ego complaint naming Stephen Perlman and his trust as alter-egos of RS Air. The complaint is based on allegations that RS Air, a discharged Subchapter 5, Chapter 11 debtor, owes NetJets money. Specifically, the complaint, which is at ER 474 at SEC in Appellant's excerpts of record, if you look at pages, or I'm sorry, paragraphs 5, 6, 37, and 76, NetJets says that RS Air owes it money. Currently, this is after the discharge has been entered. And it was entered about a month after this complaint was filed, but the complaint continues to allege that RS Air owes money to NetJets, despite the discharge. Stephen Perlman. Isn't that a fair statement, though? I mean, I understand the tone. I understand the advocacy, but that's a fair statement. I mean, there's a bit of nuance here that kind of underlies what you're addressing. Still owes it. It is discharged. It just cannot be collected from the debtor. Your Honor, the complaint doesn't make that distinction. And if you look at Ostrander, Ostrander, this is the Northern District of Ohio case from April 1st of 2022. The creditor went out of their way to say, okay, look, we're not seeking to collect because the debt has been discharged. And the court said to the extent that, you know, these alter ego claims are being pursued against the discharged debtor, you know, against these other third parties on the same claims as those against the debtor that were discharged, the court finds that the cause of action violates the discharge injunction. And then the court. That was good. I was going to say I was probably going to ask the same question. How do you reconcile your position with 524 E? I think you're saying there's basically no way that these claims can be appointed against or asserted against Mr. Perlman or his entities. Correct. Your Honor. So I'm going to slice it down into two. And I will defer to my colleague, Mr. Fill her up as to the third parties. But as to RSA are what I'm saying very specifically under Taurus, which is the most factually similar Ostrander and Yan. Is it mere allegations or enough that the law implies damage when there are allegations against the discharge debtor of alter ego? Let me ask you a different way. Let me ask you a different way. Is there any way, given the position you just took, that this plaintiff could assert claims against Mr. Perlman? Absolutely, Your Honor. So in their record here is extensive, and I'd like to walk you through it. And that is that net jets has had opportunities for years pre petition and then post petition to bring these alter ego claims. So it's not as though net jets is being denied of an opportunity if the court rules in favor of appellants here. And it goes back to if you look at excerpts of record 55 paragraph 13 discusses net jets says we took Mr. Perlman's deposition. And by the way, this was November 18th of 2020, 10 days after the petition was filed for RSA. And so in net jets is referring to a February of 2020 deposition from the state court and is saying that already that Mr. Perlman and RSA are one in the same. Now this goes on. So November 18th, 2020, then December 30th, 2020, we have. Well, let me I want to I want to stop you again to what I see as the beat of it anyway. Are you saying that there is a way in which net jets could amend its complaint? In which you could assert claims against Mr. Perlman and his entities without violating RSA discharge. Is there some way in your view that the complaint could be amended to avoid the effect of RSA discharge? If the complaint were amended, your honor, to say that RSA owes zero dollars to net jets. And that is that that is the truth, because there's a question. No, it's not true. The debt, the debt is not extinguished. The discharge does not extinguish the debt. It enjoys the collection of it, but it doesn't extinguish the debt. And I understand the point you're making is a technical matter under Section 520. Twenty four that that is what the statute says. On the other hand, aren't you eviscerating the corporate discharge, which Congress since it, you know, the act became the code in 1978? Well, I don't think so. I mean, the minute the minute that the net jets tried to invoke that CCP section, you mentioned 186 or 168. You're going to be back in bankruptcy court in a heartbeat seeking sanctions on behalf of RSA and you'd win. Oh, and I agree, your honor. And so I guess what so Taurus says it doesn't matter because you imply you imply damage. It doesn't matter. These what's their intent? Are they going to be, you know, respectful or not? You know, or are they not going to go after this discharge debtor? And the answer to that is that that it's implied harm. But even if you didn't imply harm here, there is actual harm to RSA or who is being brought into this litigation despite the discharge. Are they named as a defendant in the lawsuit? Not no, nor were they in Taurus. Well, how are they brought into the litigation? Yeah, they're brought in through discovery, your honors. They're brought in through discovery. What about what about the discharge protects debtors from discovery? On claims against third parties. Well, it's it's causing the debtors, your honor, to the discharge debtor to incur legal fees for with respect to a discharge debt. But isn't that what happens with guarantees and insurance claims and such? What is the prohibition against anything resulting from that? Absolutely, your honor. And that's interesting because you bring you bring up the guarantees. And that is something that is is very different than here, where it's that's an independent liability. This is a dependent liability. Show me how that show me how Section 524 E makes that distinction between independent and dependent liabilities. The legislative history for Section 524 states in the in the paragraphs underneath, it talks about co-obligors and guarantors. And it does not use independent versus dependent liability. But that is a type of independent liability because contracting parties have the option and opportunity to ask for additional people to answer for a debt at the outset. And here you think our current Supreme Court's I'm sorry to just give it. Do you think our current Supreme Court would even look at that legislative history? I don't think so. I feel to see how that changes the fact that the right answer, at least as a single member LLC, is where formalities are necessarily because the language of the statutes. Specifically says that a discharge of a debtor does not protect the either the assets or another party from pursuit of a claim. That does that not compete, though, Your Honor, with the corporate discharge, which is to, you know, to make the debt so that it's no longer enforceable. And it's against the debtor against the debtor is not enforceable. It doesn't say the debt is no longer a debt. It doesn't say that no one else can be responsible, which is what how broadly you're reading this particular provision 524. I disagree, Your Honor. Respectfully, I what I'm saying is that there is a time that when you have it's a prepetition alter ego claim and you have years to bring it and you wait until the discharge is entered. You do not object to the request for entry of the discharge. You do not appeal. Wait a second. Wait a second. History of this case is that they attempted to make these claims earlier. You objected when they argued that they were colorable and could be brought. You were successful in defeating their ability to proceed on those claims at an earlier time. We specifically reserve their right to proceed post discharge. That's what they've done. So how have they done anything that's illegal in this situation? So I didn't see you leave. Well, I get it. There's a violation of the discharge injunction, Your Honor. But the fact. So when they sought to pursue these, the demand that they made was in February of 2021. Then they filed their motion in March of 2021. So but prior to the bankruptcy, when the deposition of Mr. Perlman was made in state court, and this is your 55 paragraph 13 that net checks was already saying that RSA and Mr. Perlman were one in the same. And so what they didn't say, you know, you're making it so that, OK, let's just let the parties continue to fight it out. When it's a single member LLC, just have them. It doesn't matter because technically they didn't name them. And allegations alone cause harm and harm is implied. And it's, you know, the floodgates. There is a distinction, though, between Mr. Perlman individually and the company. Correct. I mean, that's right. Of course. And if that's so, if that's true, then what this is, is pursuit of liability as against another alternative party through a debt that the corporation owes but is not enforceable against a corporation. I don't see how that's a violation of the discharge injunction. Well, and your honor, you do not appear to be persuaded, but I'm directing you to Yann Torres and Ostrander, which are all single member LLC cases in which the exact arguments net justice making were made in which the court found otherwise, because essentially the corporate discharge doesn't mean anything when the single member of that LLC is then on the hook for the same debt that is now zero as to that entity that's been discharged. Those cases, your proposition would be different if they were other than single member LLCs? Your honor, it could be. And so I would ask this court to state the general rule that is articulated in Torres that, you know, if A is discharged and the allegation is that B is liable for A's death, then that's a violation of the discharge injunction. But I turn to, when you ask that question, and I was looking this up shortly before the argument, because if you look at Judge Hammond's decision, and this is ER 239 to 241, and I'm not going to read all of it, but it's with respect to this single member LLC issues that are different. Limited liability companies are different than corporations. And she cites the California Corporations Code 17703.04B that provides specifically that the failure of an LLC to hold the meetings of managers shall not be considered a fact and alter ego. And then she points out that NetJets hasn't alleged that RSA's operating agreement required meetings. So then when this is the law of LLCs, which is simpler than the law of corporations, which requires certain formalities, and when there's no evidence that an operating agreement required different things, then to allow the war path based on these exact factors that aren't at issue in an LLC, I do think it's different. And I think it's very notable that Ostrander, Yan, and Torres are all single member LLCs because it's so easy to say. What is the single member supposed to do? Mr. Perlman, are you here present? Yes, it's me. I am here present. That's the reason that the code provides it. That's the substance of the alter ego, which we're not really here for. I mean, if you want to fight that, go ahead. I don't think the other side will grudge you that much. I think we have to give Mr. Fillerup some time. Okay. Thank you, Your Honors. I'll go on mute. Okay. And this is Jeff Fillerup. I represent the managing member of the debtor, Stephen Perlman. I have to stop you for a second, Madam Clerk. He doesn't get an additional 15 minutes. It's 15 minutes between the appellants. So let's just set the clock to let's round up and call it four, okay? Oh, that's okay. I'll take the 15 minutes. No, you won't. Can we make it three then? Okay. I'll just reserve for rebuttal anything I have to say. Okay. All right. That's great. Okay. Mr. Singer. Thank you, Your Honors, and good day. And thank you for allowing us to appear by Zoom. That's really convenient for everybody involved and I'm sure most convenient for the judges. First, I want to start with, I think, one of the judges' questions about whether or not this complaint goes against the debtor. And it's clear. Number one, the complaint does not name the debtor as a party at all. It's only against the Perlman parties. Number two, if you look at the causes of action, the counts, none of them are against the debtor. And so this is not a complaint that is seeking to collect or collect against the debtor or to collect against the debtor's property. And the prospect that NetJets would, after getting a judgment, if we do get a judgment against the Perlman parties, the prospect that NetJets would try to add RS Air to that judgment, first, I don't think that's possible under California law. I'll talk about that in a second. But that's Torres. Yes, that's right, Judge, but I'll talk about that in a second because there are elements under California law that require you to meet in order to add a party to the judgment. But the bigger point is, why would we do that? That would absolutely be a violation of the discharge injunction because, as your honors recognize, the debt doesn't go away. It's the remedy against the debtor or its property that goes away. And so I think it was Judge Gann or Judge Ferris, in a hot minute, we would be back in bankruptcy court the moment we try to add RS Air as a party to a judgment against the Perlman parties. Let's take you outside the facts, which is always dangerous. But your case, it sets up well for you in that the claim was allowed, paid. There is no dispute as to RS Air's liability. What happens in a no-asset Chapter 7 where there is a liquidated claim against either shareholder or entity, and there's either alter ego reverse going out, that has to liquidate that claim. You have to establish the debt before you can hold the alter ego liable for that. I would agree with that. And so, your honor, if I understand your question correctly, in a Chapter 7, and I think this was the case in Torres, in a Chapter 7 case of the individual, like it was a reverse piercing case, but in the Chapter 7 of that individual, the claim was listed as disputed and it was not resolved in the bankruptcy. And so, your honor's question is, is there a way to pursue an alter ego claim against a non-debtor in that sort of situation where the debt is owned by the debtor? Is there a distinction between these situations? Is the law going to differentiate? I think, well, I think taking some guidance from Ostrander, because I think that actually is a good case, even though it was a very messy case and the court couldn't determine exactly what was going on with the alter ego claims, they started with the proposition, the court in that case, they started with the proposition as you want to look at who the target is. Who is the target and who is seeking the shield? And so, in every single discharge case, I think the first thing you look at is who is being targeted in the litigation for collection and for purposes of their property. And in Ostrander, they said that this complaint is so vague that it looks like it's a subterfuge to name non-debtor parties in order to get the debtor to capitulate and just pay the discharge debt. Now, Ostrander also recognizes that there may be instances where a party has to be named for nominal purposes. They have to be a party in name just to establish the debt. That's not our case here. We're not alleging that because it's been allowed under the bankruptcy plan and that's res judicata as to the debtor. This debt is determined as to the debtor. We can't collect against the debtor, but it's determined as to the debtor. It's possible that if Torres kept on going, that maybe they would have to name the Torres debtor in name only to try to establish the liability. And it's possible that that could raise some issues if the debtor is actually the target. But as your honors recognize— Well, but as Ms. Hayes indicated, as soon as you can say that's nominal only, but your obligations for discovery and such are going to drag you in to expending money. You don't care about the judgment because of discharge, but you still got the obligations that are imposed as a litigant. That's true, but in this particular case, we don't think that's the situation simply because we already have a claim that's been allowed. But is that the test we use then? I mean, is that—if it doesn't look like it's going to impose any significant— I mean, that can't be the test. I don't think that's the test. I think the test is who is the target. And that ultimately is a factual determination. And in the Torres case, which is a case which is really different than ours, you had a reverse-piercing case. The debtor was forced to come in and try to defend her own company. The debtor was named pre-bankruptcy. The complaint existed post-bankruptcy against the debtor as well, notwithstanding notice of the discharge. The court in Torres seemed to be concerned that alter ego means that the entities are one and the same, and therefore liability will essentially pass despite the corporate veil. Is that your understanding of alter ego? No, it's not, Your Honor. I don't—well, if I understand you correctly, I think the Torres issue about if A has a discharge and B is the alter ego of A, then B gets a discharge. I think they took that from the Yan decision, and Judge Hammond down at the bankruptcy court level determined that that's not what Yan said at all, and it really isn't what Yan said at all. Yan was a completely different case where the individual debtor was actually the target, and the big issue in that case—and was a party to the lawsuit— and the big issue in that Yan case was whether or not alter ego was something that could be discharged under a bankruptcy, in a bankruptcy case. Was it a claim that was subject to discharge? How Torres took that A, then B statement from Yan, I'm not prepared to say how they did, but in the context of Torres, that statement does make a little bit of sense because it was clear under the facts of that case that the debtor was the one who was being targeted. They were a named party. They were dismissed without prejudice. These were all factual findings that the Torres court made. Notwithstanding counsel's good faith pleas during oral argument that they would never, ever go after Torres, they found that under the history of that case, they said it's not without doubt, but we find it more likely than not that you're going to go after these guys, so we're just going to stop you right now. That's not what Judge Hammond found at our level. Judge Hammond said the debtor's never been targeted in this litigation. They were never a party. They're not a party. The causes of action are not against the debtor, and if NetJets tried to bring RSA in, we'd stop them right away. That's not going to happen. And so the factual—I hope I'm answering your question, Judge, but I think in Torres it's a different issue in Torres because you had facts and circumstances where it was the debtor who was being targeted, and I think that's a delicate balance. I don't think—I certainly don't think that just because there's an alter ego allegation involving a debtor that that is, if so facto, a violation of the discharge. I think that is a—I think that is completely against binding Ninth Circuit authority, which holds without exception that 524E says what it says. The discharge of a debtor does not affect the liability of any other party on that discharge debt, period. And you look at that statute first, and that statute is crystal clear, and the Ninth Circuit has held without exception that that's what we go by. That's the Loewenschutz progeny of cases that we all follow. But the proposition that Yan, Torres, and Ostrander stand for the argument that if there's a discharge allegation involving a debtor that you're automatically violating the discharge even when you're not targeting the debtor, that's not what those cases say. Those cases just stand for the non-controversial proposition that if you're doing something that actually targets the debtor to get the debtor to pay, either you're directly targeting them like in Yan or in Torres, you directly targeted them but then you kind of halfway backed off and said you're not going to target them anymore, or in Ostrander where they really just couldn't tell. But if you are doing something that directly targets, then that is going to be a violation of the discharge injunction. Discovery is not targeting. And as Your Honors recognize, discovery, that's not protected by the discharge. I mean, that would eliminate every insurance case out there. If a debtor got a discharge and wasn't subject to any discovery, that doesn't make any sense. The other thing, Your Honor, is that I want to talk about the – just touch a little bit on the public policy argument because they started out with the proposition that this is just going to open up the floodgates and destroy all small business bankruptcy cases. That's not true. Alter ego is not something that you can just on a whim just assert. I mean, you've got to meet Rule 11. You've got to assert these things. And you've got to have a factual basis to back up your allegations in this particular case. And we had a glimpse into what the Ohio court already stated. That just has a very strong alter ego face against the Perlman parties. And that matters because it shows that we're not targeting the debtor. We're not trying to get the debtor to capitulate. We're not trying to get the debtor to just fess up and say, okay, fine, I'll pay this. And so the public policy argument that they're making that this is going to destroy every small business case isn't there. And at least with respect to this case, as Judge Gann recognized, our alter ego allegations came up relatively early in this bankruptcy case. It's possible for a party – and again, we probably would have objected and it would have ran its course. But it's possible for a party to resolve a claim in a plan. If RSA thought that it had alter ego claims against Perlman, that could be resolved as part of a plan. Maybe it's a settlement. Maybe it's something else. They didn't do that, and as Your Honors recognized in the previous FAP opinion, these alter ego claims were not resolved with at all in the plan. And so once that discharge – once that plan went effective, then NETJETS was free to bring the alter ego claims against the Perlman parties, and that's all that we've done. I want to touch just a little bit on the California Civil Code because I mentioned before in responding to Judge Straker about the two elements. One of those – the second element of the California Code is that the party to be added to the litigation is a party in control of the litigation. RSA is not in control of this litigation against the Perlman parties. They don't address that fact in any of their papers, and so that doesn't make any sense that we'd be able to add RSA even under the California law if it was ever applicable. And if NETJETS was crazy enough to even try, we couldn't do it under that California law. Torres was different. Torres was a reverse-piercing case, and reverse-piercing actually matters in those circumstances. It's easier to see how someone has to come in and defend their company. It's easier to see in a reverse-piercing case why an individual debtor could be added because it's those reverse-piercing cases where you have that concept that someone is in control of the company. That's not the case here. This is not a reverse-piercing alter ego or piercing the corporate veil cause of action. It's a traditional cause of action. Mr. Perlman is the one who's in control, not RSA. Perlman already is a party, and he's not a debtor, and therefore he doesn't get the benefit of the discharge. Lastly, Judge, on a policy point that I want to just emphasize, well, a couple things. Alter ego is a remedy. And so the argument that Perlman is the same as RSA or an alter ego, that they actually become one and the same, that's not what alter ego actually does. Alter ego is simply a remedy to right wrongful conduct and address harm. It's a limited thing. If NetJet succeeds in finding Perlman, the Perlman parties are alter egos, the Perlman parties do not become RSA either legally or factually. They don't physically become RSA. It's just for the limited purposes. You know what? For this purpose only, we're going to look beyond the corporate veil and find that you are responsible for this debt because you are the alter ego because you did something wrong. It's wrongful conduct. And to accept the argument that a discharge of a debtor just evaporates alter ego for all purposes even when the debtor is not targeted, to accept that, you're actually rewarding bad conduct. You're rewarding wrongful alter ego-type conduct, and I don't think that's what bankruptcy courts should be doing, and that's certainly not within the language of Section 524E. 524E is really clear, and that's exactly where we should start. Judges, unless you have any questions for me, I don't think I have any other points that I want to hit, and I appreciate your questions. Any questions from the panel? Nothing. Okay. Thank you very much. Now we'll finally get back to Mr. Fillerup. There we go. We have a precise time. Go ahead please, Mr. Fillerup. Okay. I really need that 15 minutes back. Okay. We'll never get it back either. I'll be quick. I just have a couple of points. One, I want to get back to a question Judge Gan had about Section 524E, and I just wanted to highlight the fact that the language in 524E is any other entity. And here, in the case of an alter ego claim, we're not talking about another entity because in order to prevail on the alter ego claim, that just has to show that it's not another entity. They're the same. Isn't it, Mr. Fillerup, isn't it really true that what they're saying is Mr. Perlman is liable for this debt because he did something that caused them injury? He's not saying, they're not saying that they're the same entity. They're saying you're liable. It's a remedy for payment of whatever obligation is owed, but you're liable, not RS Air. Isn't that the distinction they're drawing? No, they're saying that you and RS Air are the same. They're saying we know you didn't enter into a contract with RS Air or with NetChat. We know that there's no tort obligation. We know that you're not a guarantor. You're liable for the obligation. Unjust enrichment. You took the benefits, and you never paid for it, so you're liable for this obligation. It's not a contractual. It's not a debt that's owed by RS Air. It's your obligation. That would be a separate claim, and there is no separate claim against Mr. Perlman. The claim is completely dependent on that claim against RS Air. But that's the point of alter ego being an extension of liability rather than a substantive consolidation of the two entities into a single entity. I believe that's the point Judge Gannon is trying to make, and I believe that's the point of state law alter ego. It's an extension of liability. It does not collapse the two entities into one unlike substantive consolidation. But put Mr. Perlman in bankruptcy, and he'll get the protection of a discharge after the case is over. Well, but this is alter ego is a state concept. It's not a bankruptcy concept. You keep using the same entity, and that is the function. However it may arise, you continue to focus upon the same entity being the same entity. It's not. Well, in order to establish alter ego liability, the standard is show you, NetJets, have to prove that they're the same. You have to bring in RS Air and look at RS Air's formation, their operation, their finances, and show that that is the same as Mr. Perlman. And that's why when NetJets says, oh, this doesn't really involve RS Air, it certainly involves RS Air. It involves RS Air because they need RS Air to prove their case. They have to have RS Air at trial to prove their case. Even though they have a already admitted claim through the Chapter 11 proceeding that's been not disputed, that's been accepted? Yes. Mr. Perlman thinks that's totally unfair that NetJets contends he's responsible for that obligation when he had no say in the matter. It was RS Air's decision during the bankruptcy case. And so absolutely he's going to contest that. Okay, we're past our time, so thank you very much for the good arguments. Thank you. Interesting case. The matter is submitted and you'll get our decision in due course. Thank you. Thank you, your honors.
judges: Faris, Spraker, and Gan